JONES ET AL., CIVIL SERVICE COMMISSION OF CITY OF CLEVELAND, *v.* THE STATE, EX REL. VEASEY.

(Decided December 23, 1930.)

*Mr. H. H. Burton* and *Mr. F. B. Douglass*, for plaintiffs in error.
*Mr. W. E. Minshall*, for defendant in error.

VICKERY, P. J. This action comes into this court on a petition in error to the common pleas court of Cuyahoga county.

The plaintiffs in error constitute the board of civil service commissioners for the city of Cleveland, and the defendant in error, James Veasey, is a police officer in the city of Cleveland, who, in the court below, brought his action in mandamus in which he sought to compel the civil service commission of the city of Cleveland either to limit a scheduled promotional examination for the position of chief of police to one person, namely, the commissioner of traffic, or to compel the civil service commission to declare said examination open to all members of the division of police of the city of Cleveland. It will be noticed that this prayer by Veasey is in the alternative—either to limit the

examination to one person, namely, Traffic Commissioner Donahue, or to open up the examination to all members of the division of the police.

At the hearing of the case in the common pleas court, the trial judge granted the prayer and issued a writ of mandamus ordering the civil service commissioners to limit their examination to that of Commissioner of Traffic Edward Donahue, there being but one commissioner of traffic.

How there could be a competitive examination where only one person was eligible has not yet been made clear to the writer of this opinion, but the effect of the decision of the common pleas court is that the examination that was to have been held for a chief of police to succeed the retiring chief, Graul, could not be held; and the question becomes of so much importance that the commissioners of civil service seek a ruling by this court as to whether the common pleas court was right—maybe, as it is urged, to clarify the situation in the police and fire departments of the city of Cleveland.

From the pleadings, arguments and written briefs, we learn that the city of Cleveland adopted a charter, under the Home Rule Amendment to the Constitution of 1912 (Article XVIII, Constitution), and that charter forms the basis of the city's government, and the various departments of the government are established and outlined in the charter. The charter provides for the establishment of civil service, and creates for that purpose the civil service commission, who have the right, power and duties of classifying the various departments of service; and in the classification that has been established by the civil service commission are various

and different classes, depending upon the importance, quality of the service, and the number of men in each class, both in the fire and police departments.

We also learn that Jacob Graul, the former chief of police, had retired, and there was to be a vacancy on and after the 15th of October, when his resignation became effective. This vacancy was certified to the civil service commission, and they provided for an examination, and in the class immediately inferior to that of chief of police there were three men under the rules of the civil service commission who were eligible to take the examination: Commissioner of Traffic Donahue, Chief Inspector of Detectives Cody, and Inspector of Police Matowitz. The examination was fixed for the 1st day of October.

Before that time came the council by ordinance raised the salary of Traffic Commissioner Donahue from $4,416—which was the salary of himself, Matowitz and Cody—to $6,000. Whereupon the relator, Veasey, brought this action, just in what capacity does not appear, but as the question is not raised as to whether he had a right to bring the suit, we do not deem it wise, expedient, or our duty to raise the question of his right to mandamus the civil service commissioners to either limit their examination to Donahue or to the police generally.

One of the theories upon which the action was predicated in the court below was to limit the examination to Donahue alone, and that is the important part, and that is apparently the view the court below took of the matter; and we need not concern ourselves with the second reason for the writ of mandamus. I say the view that was taken by Veasey

of the matter was that, inasmuch as the council had increased the salary of Donahue to $6,000, it operated as a promotion, and took him out of the class, and *ipso facto* established a new class between that of the three men above named and the office of chief of police, and that therefore the only man that was eligible to take the examination was Donahue. And that has been the argument of counsel for Veasey.

He raises a rather singular question in his argument likewise, and that is that there is nothing before this court, that the purpose of that writ of mandamus was to compel the abandonment of the examination of October 1st, or at least limit it to the examination of Donahue only, and that, inasmuch as that time has gone by, there is nothing before the court.

Well, it does not come very well from Veasey's mouth, after he has accomplished his purpose in having a judgment rendered by a court of competent jurisdiction, to thus tie the hands of the civil service commission and thereafter claim that that ruling cannot be modified. I believe it is argued that there is nothing to prevent the civil service commission from still having an examination. However that may be, we simply mention this phase of the argument in passing over it. There was a judgment rendered by a court of competent jurisdiction which tied the hands of the civil service commission and limited it in whatever examination it might give to the aspirant for the chief of police to one person only—to Mr. Donahue. Now as a matter of fact Mr. Donahue does not want the position, and would not take it, if I understand the situation rightly. But it is argued that the civil service rules ought to

be followed or ought to be abandoned entirely, and the main argument is that the matter is in such an unclarified condition that the court ought to clear the atmosphere so that the civil service commission and the police and fire departments might know where they stand.

The argument is made in this case that the salary increase beyond the limit of the class in which Mr. Donahue was a member automatically operated as a *"promotion."* Well, let us assume that it did operate as a promotion. But with equal force is it argued that it *eo instanti* made another classification of the police service, and we are cited to some authorities which it is urged point that way, to which we will return later.

It is true that counsel must fix the salaries of officers, but the classification and the grades are determined under the charter of the city of Cleveland by the civil service commission, and there is no classified service until the commission makes classes and establishes grades; and before a person can get into a class, if it is above the one he now occupies, he must pass the civil service examination and be promoted to that class.

Now there is nothing in this record to show, nor does it exist as a matter of fact, that the civil service commission ever created a class between the chief of police and the class that was occupied by the three gentlemen who were eligible under the former classification to the office of chief of police or eligible to the examination for the chief of police.

So the question at once arises: Can the council by increasing the salary above the limit of a grade occupied by the person whose salary they want to

increase, thereby elevate that man to a class above that grade without any *examination?* If they can, then the council can destroy the effect of the civil service law and by increasing a man's salary promote him; and, as it is argued, that promotion would create a different class, and that man thus promoted could hold the office in that class without any civil service examination, without complying with the rules of the civil service.

Now we do not think that any such drastic effect as that was ever contemplated. It is true the charter of Cleveland does say that an increase of salary beyond the limit of the grade to which the officer was attached does act as a promotion; but it does not say that the *increasing of a salary creates a class,* and puts the officer whose salary has been increased into that class.

We are cited to the case of *O'Malley* v. *Board of Education of City of New York,* 160 App. Div., 261, 145 N. Y. S., 645, in which it is claimed that the court of last resort in New York state has held under a civil service law, the fifteenth section of which is like unto the ninety-seventh section of our charter, that the increasing of the salary beyond the limit of the grade to which the officer is attached does operate as a promotion, but the same decision holds that unless the man thus promoted submits himself to a civil service examination, and passes the examination, he does not occupy an office in a higher grade than he did before.

In other words, the mere increase of salary alone will not create a higher class. It will simply devolve upon the civil service commission perhaps a duty to create that class, and then to provide for an

examination by appropriate legislation; however, until that is done, while the officer may or may not be entitled to his increased salary, there has been no new class created, but he remains in the same class that he was in before the salary was increased, even though it might be a promotion.

Now that is what the *O'Malley case* holds in New York. In the instant case it is admitted that Mr. Donahue did not take any civil service examination; it is admitted that the board of civil service commissioners did not create a new class and they did not make any rules for the examination of applicants to that class, for, as already stated, there was no new class created, and, consequently Donahue, while he gets an increase in salary, is still in the same class he occupied when it was contemplated to have the examination of October 1st; that is he is in a class with Cody and Matowitz, the three who were under the rules eligible to take the examination for chief of police.

One cannot permit the council, by increasing the salary of a person, to arrogate to itself the creation of a new grade or a new class distinguishable from the class that was eligible to take the examination when the move was started, and thus create a new class, which would destroy the effect of the purpose of the examination. If that could be done, then whenever a civil service examination was to be held for a certain position, and a certain group of men in a certain class were eligible to it, by advancing the salary of one of the men in that grade above the limit of the salary of the grade in which they all were, but below the salary of the next higher grade, the one man thus advanced would alone be eligible

to examination for the higher grade, which would defeat and make useless entirely the purpose of the civil service examination. Such would be inimicable to the proper administration of the civil service law (Sections 486-1 to 486-31, General Code) and would permit council to defeat the very end and aim of the law.

Under our charter while the council may fix salaries, it cannot grant "promotions," nor can it create higher or distinct classes of service. That is the function of the civil service commission and we think we need go no further to show that the decision of the common pleas court was erroneous in seeking to limit this examination to Donahue alone, and from what we have already said it must follow that the judgment should be reversed.

But what is sought to be done by this writ of mandamus? It was to control the discretion and actions of the civil service commission, and, where there is a discretion, unless there is alleged and proved an abuse of that discretion, which is neither alleged nor proved in this case, the court will not interfere with such discretion of the civil service commission. When the civil service commission, by its rules, held in good faith, so far as it appears, that this examination was open to the three gentlemen named, it had discretion in the matter, and the mere fact that Mr. Donahue and Mr. Cody did not want to take the examination did not make it any less a competitive examination, if it was open to three persons; but, under the ruling of his honor, the common pleas court, limiting the examination to Donahue alone, the examination would be a mere farce, because by the very ruling of the court it

could not be competitive when there was nobody that could compete.

Now when the commission left the examination open to Matowitz, Cody and Donahue, the mere fact that Cody and Donahue did not want to take the examination would make no difference, nor would the fact that Donahue did not want to take it because his salary had been increased; it was still open to competitive examination, and we say that for all intents and purposes Donahue not having taken the civil service examination for a position higher than that of the grade from which he was promoted, if his increase of salary was a promotion, is still a member of the grade that was eligible under the rules of the civil service commission to the examination for chief of police.

But we wonder if it is necessary to have a civil service examination for a chief of police. While the civil service commission probably has classified it so that a civil service examination might be proper, yet cannot the director of public safety, irrespective of the rules of the civil service commission, appoint an individual for chief? If we understand the decision by our Supreme Court in the case of *Hile* v. *City of Cleveland,* 118 Ohio St., 99, 160 N. E., 621, that was the ruling laid down by Judge Kinkade, as spokesman for the court in that case; and the reason why this should be so, as Judge Kinkade pointed out, is that a man might be perfect in his examination and yet not be qualified for the position of chief of police. That requires a peculiar kind of ability—executive, administrative, and a knowledge of men and things, and how to handle them—and that may or may not be determined by a civil service

examination. If a man has been in the police department as Chief Graul was for 25 years, two years of which were spent as acting chief, and years spent as inspector of police, and years as patrolman, and has not demonstrated his ability, as Judge Kinkade points out, how can it be determined by an examination?

Now the director of public safety might refer the matter to the civil service commission and have a man take the examination, and yet, under our conception of the decision in 118 Ohio State, *supra,* he could appoint irrespective of that examination, and he might seek their aid for the purpose of helping him determine the qualifications of a man that he desired to appoint as chief of police. The commission might take into consideration, and transmit their information to the safety director, the educational qualifications, the experience of the man whom the safety director wanted to appoint, or the director might find that out himself from a man's long service in the department, either in the fire or police branch. If the man he desires to appoint has had long years of service in all of the departments and has shown in that period of time his qualifications as to how to handle men, his qualifications as being an alert, wide-awake, up-to-date officer, with a knowledge of what the city needs and with ability to cope with situations as they arise, that should be the determinative factor as to whether the man should be chief of police; and not, forsooth, that another might pass a better examination.

Personally, I think any one of the three gentlemen named for the civil service examination would make a proper chief of police of the city of Cleveland. I

have the keenest admiration for them all; but, when one comes to choice of an executive officer, it cannot be accomplished by competitive examination.

Take the manager of the city of Cleveland, if you please. Of course, that office has not been classified. But how can one classify it? Can one have an examination of various citizens of this city and elsewhere, and then appoint the manager out of one of the highest three? There are some things to which one cannot adopt the rules of civil service and apply them; to which one cannot adopt the rules of competitive examination. I think the chief of police of the city of Cleveland, and of all other cities, is one of them. I think that position is not to be classified. I think that is an office, the filling of which must be determined by the head of the safety department of the city of Cleveland, and the method that he adopts to find out the qualifications might be through a civil service examination or might be by any other way; but surely an acting chief of police, who has served long years in the department, with a full knowledge of what Cleveland needs, what our crime problems are, what the underworld is and how to cope with it, must be qualified; but this could not be determined by a competitive examination alone, but must be determined from knowledge and information about the individual man to be appointed.

We have gone thus far because the counsel for Veasey seemed to indicate that he wanted to have the matter clarified.

We think, therefore, that this judgment of the common pleas court must be reversed for the reason that, under the rules of law cited by counsel for Veasey, Donahue had not been advanced to a sepa-

rate class; and the only eligible list under the civil service for the examination that was supposed to have been held on the 1st of October consisted of Mr. Donahue, Mr. Matowitz and Mr. Cody; and, if neither Cody nor Donahue desired to take the examination, the board could rightly certify Matowitz to the safety director. But aside from that it is sought by this writ to question the discretion and full power of the civil service commission to create grades and to classify the service, and to question their full power to make the rules for examination. When the commission limited the list to the three gentlemen named, no fraud or corruption having been shown, a court cannot control their discretion, and therefore the writ should have been refused.

We say that Donahue was not in a class intervening between the $4,416 salary grade and the grade of the chief of police, whose salary was $6,500, and merely because his salary was fixed between these two limits, a new class was not created; it only authorized the board of commissioners to create such a class and to provide for examinations in that class, and, Mr. Donahue not having taken the examination, there being no examination to take, he for all intents and purposes remains in the class from which he was promoted, if the salary increase be a "promotion," within the meaning of the charter.

We think, further, as already stated, that it was not necessary to have any examination for the office of chief of police at all, that the director could have appointed any one of the three men as long as they were competent from long service, and that no complaint could have been made. If complaint could

be made, that matter should have been reached in another way; it cannot be reached by mandamus, as it was sought to be reached in this case.

The judgment of the court will therefore be that the judgment of the court of common pleas be reversed, and, coming on to give the judgment that the court of common pleas should have given, it will be ordered that the petition be dismissed at the cost of the petitioner.

*Judgment reversed and final judgment rendered.*

MIDDLETON and MAUCK, JJ., concur in judgment.

Judges MIDDLETON and MAUCK, of the Fourth Appellate District, sitting by designation in the Eighth Appellate District.