Court of Common Pleas for Cuyahoga County.

WANDA HAGAN, ETC., V. CITY OF CLEVELAND ET AL. *

Decided March 11, 1932.

*No error or appeal was prosecuted from this decision.

*George M. Heil,* for plaintiff.
*Henry S. Brainard,* and *Charles F. Carr,* for defendants.

ALVA R. CORLETT, J.

This is a taxpayer's suit to restrain the defendants, the City of Cleveland; Edwin D. Barry, Director of Public Safety; Albert F. Jackson, Commissioner of Accounts; Russell V. Johnson, City Treasurer, and the members of the Civil Service Commission, from authorizing or paying the defendant, William A. McMaster, his salary as a Deputy Inspector of Police.

The evidence shows that for more than two years previous to November 5, 1931, to-wit, since May 1, 1929, said McMaster had been detailed to special duty, in charge of a so-called liquor squad, and that he had devoted substantially all of his time to the enforcement of the Federal Prohibition Act, the State Liquor Law, and the Liquor Ordinance of the City of Cleveland; that on November 5, 1931, the defendant, Edwin D. Barry, Director of Public Safety of the City of Cleveland, appointed the defendant, William A. McMaster, as a Deputy Inspector of Police; that on that date there was an eligible list, under the Civil Service rules of the city of Cleveland, for the position of Deputy Inspector of Police, and that name of the defendant, William A. McMaster, did not appear on such Civil Service list, for the reason that said McMaster had not taken the examination for this position, which examination was held on February 28, 1930; that at the time the Director of Public Safety appointed McMaster as Deputy Inspector of Police the Director of Public Safety had before him an eligible list for this position, which list had been certified to the Director of Public Safety by the Civil

Service Commission, in accordance with the Civil Service rules.

The plaintiff, whose husband, Captain Andrew J. Hagan, stood first on the Civil Service eligible list, claims that the appointment of Captain McMaster was illegal, for two reasons: (1) Because the appointment was not made from the Civil Service eligible list; and (2) because the members of the Civil Service Commission, nor any of its predecessors, had graded, classified and standardized the position, rank and grade of Deputy Inspector of Police, or the duties thereof, as provided in the Charter of the city of Cleveland.

The defendants claim that the appointment of McMaster, although not made from the Civil Service eligible list, was authorized by Section 96 of the Charter of the City of Cleveland, which the defendants claim provided that the appointment to the position of Deputy Inspector of Police might be made either from the eligible list or in accordance with the last clause of Section 96 of the Charter of the City of Cleveland, which clause reads as follows: "or unless he shall have served with fidelity for at least two years immediately preceding in a similar position under the city"; and that the defendant, Captain McMaster, had served with fidelity for at least two years immediately preceding his appointment as Deputy Inspector of Police, and that his duties for more than two years had been similar to those of a Deputy Inspector of Police.

The defendants further claim that the Civil Service Commission of the City of Cleveland had classified the position, rank and grade of Deputy Inspector of Police by the adoption of the Rules and Regulations of the Police Department, which Rules and Regulations of the Police Department had been promulgated by the Director of Public Safety, in accordance with Section 85 of the Charter of the City of Cleveland, which last named section provides that the Director of the Department of Public Safety shall classify the police and fire service of the city in conformity with the ordinance of the council, and shall make rules for the regulation and discipline of such service.

This case involves the construction and interpretation of certain sections of the Civil Service laws, including Section 96 of the Charter of the City of Cleveland as in force on the 5th day of November, 1931, which charter provision reads as follows:

"No person shall be appointed or employed in the classified service of the city under any title not appropriate to the duties to be performed and no person shall be transferred to, or be assigned to perform any duties of, a position subject to competitive tests unless he shall have been appointed to the position from which the transfer is made as a result of open competitive test equivalent to that required for the position to be filled, or *unless he shall have served with fidelity for at least two years immediately preceding in a similar position under the city.*"

The very purpose of the civil service in public positions is to promote, encourage and reward honest, faithful and meritorious service.

The Constitution and the laws of the state of Ohio and the Charter of the City of Cleveland provide very practical and definite ways of accomplishing this purpose. In the case of *Hile* v. *City of Cleveland et al.*, 118 O. S., 99, the Supreme Court of this state, in an opinion written by Judge Kinkade, decided some issues of law that apply in the instant case. In that case the plaintiff had contended that the appointment of Jacob Graul as Chief of Police of the City of Cleveland without competitive examination was in violation of Section 10, Article 15, of the Constitution; that section reads as follows:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, *as far as practicable,* by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

In conformance with this provision of the Constitution, the Legislature of the state of Ohio enacted Sections 486-1 to 486-31, General Code, providing for the appointment of civil service commissions, and defining, with

some degree of definiteness, the duties of the civil service commissions. The Charter of the City of Cleveland as in force on November 5, 1931, which has been introduced in evidence in this case, being Defendants' Exhibit 3, in Section 92, under the title "For What Rules Must Provide," referring to the civil service rules, reads as follows:

"Section 92. The rules of the Civil Service Commission shall among other things, provide:

"(a) For the standardization and classification of all positions and employments in the classified service of the city, including officers and employees of the Civil Service Commission. Such classification into groups and subdivisions shall be based upon and graded according to duties and responsibilities and so arranged as to promote the filling of the higher grades, *so far as practicable,* through promotions."

Then, Section 96, to which the court has already directed attention, provides that appointment or employment in the classified service of the city or assignments or transfers to any position shall not be made without a competitive examination, "or unless he shall have served with fidelity for at least two years immediately preceding in a similar position under the city."

It has been argued by counsel for the plaintiff that the Supreme Court of this state, in the case of *Hile* v. *City of Cleveland, supra,* read into the law something that is not there. It is apparent that the framers of the Constitution of the state of Ohio, as well as the members of the state legislature in passing legislation establishing civil service commissions in the cities, counties and state, and the framers of the Charter of the city of Cleveland introduced into their legislation language which in itself admits of some alternative action in the practical application and carrying out of the civil service provisions.

Counsel for the plaintiff has argued, and it is alleged in plaintiff's petition filed in this case, that, by the promotion of Captain McMaster to the position of Deputy Inspector of Police, the entire morale of the Police Department of the City of Cleveland has been endangered. The

morale of the Police Department, the court believes, was not endangered by the promotion of Captain McMaster in the manner indicated by the evidence in this case. The morale of the Police Department could not be endangered by such action, because there can be no morale in a Police Department that is not based upon honest, faithful and efficient service; and, in theory, at least, under the Constitution and laws of the state of Ohio and the Charter provisions of the City of Cleveland, no officer in the Police Department could or should be able to gain recognition by way of promotion except through competitive examination or by serving, again quoting the language of Section 96, "with fidelity for at least two years immediately preceding in a similar position under the city."

Now, what is meant by the expression "unless he shall have served with *fidelity*?" Webster's New International Dictionary, as published in 1930, defines "fidelity" as follows: "Faithfulness; adherence to right; careful and exact observance of duty, or discharge of obligations"; synonyms that are given are "veracity, honesty, faithfulness; integrity; faith, loyalty."

The court believes that the framers of the Charter of the City of Cleveland, as compiled and issued by the City Clerk, November, 1923, being Defendant' Exhibit 3, chose the word "fidelity" advisedly and carefully.

No position in the public service requires a higher degree of fidelity than that of a police officer, and who will say that experience of two years under the eyes of exacting superior officers, as well as the eyes of the public, is not as good a way of determining fitness as a competitive examination, which, at the best, is but a "prophecy," as the Supreme Court of this state said in the *Hile* v. *Cleveland* case? Had the framers of the Constitution and laws of this state or the framers of the Charter of the City of Cleveland cared to, they could have provided for the appointment and promotion in the public service *exclusively* by competitive examination; but this they did not do, and the Supreme Court case already referred to has held that, so far as the Chief of Police is concerned, at least, *no competitive ex-*

*amination was required*, provided an applicant had the necessary two years' experience.

The Supreme Court, in this case, on page 103, uses this language:

"The charter requires competitive test unless the applicant *'shall have served with fidelity for at least two years immediately preceding in a similar position under the city.'* In other words, *experience is substituted for prophecy* as a test of what an applicant can do, and probably will do, if appointed.

"Men who have the ability to control and manage men successfully and to plan and carry out enterprises of importance are not easy to find."

Parenthetically, they are not easy to find in the Police Department, either. Again, from the same opinion:

"It is common knowledge that most of the successful executives at the heads of important business institutions throughout the country today are men who began in lower positions and were promoted as they developed, and they developed because they possessed the indescribable qualities of leadership,"—

and, parenthetically again, how can any civil service competitive examination determine "indescribable qualities of leadership"?

"* * * the ability to manage and control men, and to plan and lay out their work and supervise the activities of a large force. It has been well said that: 'No man can learn what he has not preparation for learning, however near to his eyes is the object.'"

Further, in this same opinion, the court says:

"The plaintiff in error claims that Graul had not served with fidelity in a similar position for two years prior to his appointment. There is ample evidence in the record to sustain a finding by the trial and appellate courts that he had so served. His service demonstrated and established his capacity to fill the place.

"It is difficult to see how the city could have promulgated a sounder or safer rule of procedure, or one more in accord with the letter and spirit of Section 10, Article XV, of the Constitution, than that embraced in Section 96 of the Cleveland City Charter."

Under the provisions of Section 96 of the Charter of the City of Cleveland the Director of Public Safety had the right to appoint a Captain of Police to fill a vacancy in the next higher classification or rank, namely, Deputy Inspector of Police, even though there was at the time of the appointment an eligible list of Captains of Police who had taken a promotional competitive civil service examination for the position, provided the appointee had "served with fidelity for at least two years immediately preceding in a similar position (Deputy Inspector of Police) under the city."

It is significant to note that the language of Section 96, so far as it relates to appointment or promotion, is *cumulative* in that it provides for competitive examinations *or* service with fidelity. The existence of an eligible list (created as a result of competitive examination) does not prevent an appointing officer from electing to promote persons by the alternative method provided in Section 96 (service with fidelity) in preference to the competitive examination method. If it had been intended that competitive examinations should be the only method to be used, the section would not have provided the alternative or cumulative method of *"or* unless he shall have served with fidelity for at least two years * * *."* It seems fundamental that the use of the word *"or"* gives the appointing authority the definite right to follow *either* of the methods provided, regardless of the existence or non-existence of an eligible list at the time. *Any interpretation other than the foregoing would nullify the provisions of Section 96.*

At the time of his appointment as Deputy Inspector, had Captain McMaster for at least two years immediately preceding "served with fidelity in a similar position"? It is undisputed that he served with fidelity. The plaintiff admits it, and the evidence proves it. Chief Matowitz testified that he had served with McMaster as a patrolman and ever since McMaster has been on the force, for over 20 years; that throughout this entire period McMaster had been an upstanding and conscientious officer; and, referring to McMaster's service, the

Chief said: "I always found McMaster to be an honest, capable, courageous and efficient officer." So there can be no question but what Captain McMaster had served with fidelity in the very highest degree, in everything that word means, for at least two years immediately preceding the appointment.

Now, we come to the question of whether he had served with that fidelity in a position similar to that of Deputy Inspector of Police. When Chief Matowitz was asked as to the duties of a Deputy Inspector of Police, the Chief said: "He is a policeman, and it is his duty to enforce the laws and arrest violators"; and, as a Captain in charge of a liquor squad of half a dozen men, including some Sergeants, for more than two years previous to his appointment, and for over four months after his appointment as Deputy Inspector, Captain McMaster was actively engaged in arresting liquor law violators. There were no limits to his assignments by way of certain precincts or districts—his field of operation covered the entire city.

Counsel for the plaintiff has attempted to prove by the evidence in this case that the duties of a Deputy Inspector of Police include, among other things, making out and submitting reports, and attending the regular meetings at Police Headquarters. While these things may be part of the routine duties of all officers of the Police Department, including Deputy Inspectors of Police, they are merely incidental to the main duty of getting out onto the streets, into the dens of vice, where the criminals are, and where the laws are violated, and there, in those places, and under those circumstances, arresting those engaged in violating the law.

The evidence shows that at various times Captain Hagan, husband of the plaintiff in this case, now Acting Deputy Police Inspector, as well as Deputy Inspectors Sweeney, Horrigan, Carey, and Veasey, and others, were at various times detailed to duties similar to those performed by McMaster. These other Inspectors were assigned to special duty in the suppression of special kinds of vice, such as gambling, policy games, assaults on women; and, if there was any difference in the duties

performed by McMaster, it was due to the fact that he was more diligent, active and effective in the performance of his duties and more successful in the results accomplished. Certainly there was no evidence introduced in the case that would indicate to the court or justify the court in finding that he was less aggressive, active, diligent and efficient than any other Deputy Inspector of Police who has appeared before the court as a witness in this case.

Now, as to the other question raised in plaintiff's petition in this case, namely, that the appointment was illegal because the Civil Service Commission, as required by law, has failed to standardize and classify and define the duties of the position of Deputy Inspector of Police: It is agreed that this position is in the competitive or classified service. A provision of the Charter of the City of Cleveland is as follows:

"Section 92. The rules of the Civil Service Commission shall, among other things, provide:

(a) For the standardization and classification of all positions and employments in the classified service of the city, including officers and employees of the Civil Service Commission. Such classification into groups and subdivisions shall be based upon and graded according to duties and responsibilities and so arranged as to promote the filling of the higher grades, so far as practicable, through promotions."

The court finds the Civil Service Commission adopted a standardization and classification of positions in the Police Department, including the position of Deputy Inspector of Police. It is in the exhibit referred to in the defendants' answer as "Exhibit B," and also marked Defendants' Exhibit 2, entitled "Civil Service Commission of the City of Cleveland, Ohio. Laws, Rules and the Classification of the Public Service of the City of Cleveland, the County of Cuyahoga and the Board of Education," adopted October 25, 1926; and on page 29 we find —"Police and Fire Departments"—"Rule 14—Original Appointments":

"1. Original appointments to the uniformed force of police and fire departments shall be in the lowest grades

in each service, *as classified by the Director of Public Safety and ordinance of the Council."* (Italics by court.)

Further it is provided:

"3. The eligibility of an applicant for admission to examination for any position in the *police* or fire *departments* shall be governed by *the rules and regulations existing in such departments* on the date fixed for the examination, and no person shall be permitted to take such examination who cannot qualify in accordance with *such rules and regulations."*

Then, there are quite a number of other provisions including Rule 15, which provides for "Promotions":

"1. Promotions in the uniformed force of the *Police and Fire Departments* shall be from class to class, from the lowest class to the highest within said forces, *as duly classified in the rules and regulations* governing said departments respectively."

It is apparent that, so far as the standardization, classification and definition of duties of members of the Police Department was concerned, the Civil Service Commission adopted the then existing Rules and Regulations of the Police Department. And on pages 29, 30, 31 and 32 of the Civil Service Rules (Defendants' Exhibit 2) there are frequent references to the Rules of the Police Department (Defendants' Exhibit 4).

Now, what do the rules and regulations of the Police Department say about the duties of Deputy Police Inspectors? There has been introduced in evidence what has been referred to in the defendants' answer as Exhibit C, and also marked Defendants' Exhibit 4: "Rules and Regulations for the Government of the Division of Police of the Department of Public Safety, City of Cleveland, Ohio, 1921." Let us make an examination of that exhibit, having in mind Section 85 of the Charter of the City of Cleveland, which is under the heading, "Classification of Police and Fire Service," and reads as follows:

"Section 85. *The director* of the department immediately in charge thereof, or the City Manager, *shall classify the police and fire service* of the city, in conformity with the ordinance of the Council concerning the number

of persons to be employed therein, and *shall make rules for the regulation and discipline of such service except as hereinbefore provided."*

On page 7 of the Rules and Regulations adopted April 1, 1921, by the then Director of Public Safety of the City of Cleveland, we find "Section 1. Organization of Division of Police,"

"Paragraph 5. *The classified division* shall sonsist of *six classes* as follows:
"First: Inspector or Inspectors.
"Second: Deputy Inspectors.
"Third: Captains.
"Fourth: Lieutenants.
"Fifth: Sergeants.
"Sixth: Patrolmen."

This rule was modified by Defendants' Exhibit 5, introduced in evidence, which is a letter signed by Edwin D. Barry, Director of Public Safety, under date of September 17, 1930, and reads as follows:

"To the Honorable Civil Service Commission, City of Cleveland. Gentlemen:
"You are hereby advised that the following changes have been ordered in the Rules and Regulations governing the Cleveland Police Department, and the changes specified herein shall be in full force and effect immediately: Section 1.—Organization of Division of Police.
"Paragraph 5. *The classified division shall consist of seven classes as follows:*
"First: Chief of Police.
"Second: Inspector of Police, Chief Inspector of Detectives and Commissioner of Traffic.
"Third: *Deputy Inspectors,* Superintendent of Criminal Investigation, Deputy Commissioner of Traffic and Surgeon of Police.
"Fourth: Captains, Superintendent of Criminal Identification, Secretary of Police, Superintendent of Machinery, Superintendent of Tailor Shop, and Superintendent of Civil Investigation.
"Fifth: Lieutenants, Assistant Secretary of Police, Superintendent of Police Exchange, Assistant Superintendent of Civil Investigation and Assistant Superintendent of Machinery.
"Sixth: Sergeants.
"Seventh: Patrolmen,"

and so on. Among other things, the following is included in this letter:

*"All Captains shall be eligible to promotion as Deputy Inspectors,* Deputy Commissioner of Traffic and Superintendent of Criminal Investigation."

It has been stipulated that council legislation had been passed fixing the number of Deputy Inspectors of Police at eight; and it is alleged in plaintiff's petition, and admitted in the answer, I believe, that some time previous to the appointment of Captain McMaster as Deputy Inspector the Council passed legislation fixing the compensation for the position of Deputy Inspector of Police.

Now, on page 38 of this Defendants' Exhibit 4, "Rules and Regulations for the Government of the Division of Police," we find the duties of the Chief of Police defined under Section 3, entitled "Rules for Chief of Police." Then follow Rules 200 to 206, inclusive. On page 40, under Section 4, we find the title, "Rules for Inspector of Police." Rule 225 then defines the duties of the Inspector; and on page 41, under Section 5, under the title of "Rules for Commanding Officers," we find Rule 250:

"A commanding officer within the purpose of these rules and regulations, is any member of the force assigned by the chief of police to exercise command."

A Deputy Inspector of Police would come under that rule. Rule 253 reads as follows:

"Each commanding officer is responsible for the enforcement of the law, the preservation of the peace, and the protection of life and property within the territory alloted to his command."

Rule 254:

"Each commanding officer is responsible that police duty is properly performed by each member of his command;" * * *.

Then there are other rules covering those routine duties, to which the court has already referred, which are merely incidental to the performance of police duty and the enforcement of law.

Plaintiff's Exhibit G, which has been submitted in evidence at the request of the court, by Mr. Swain, being an extract or extracts from the Minutes of the Cleveland Civil Service Commission of October 25, 1926, reads:

"After careful consideration and conference covering a period of several months, the rules of the Civil Service Commission were amended and adopted as follows:
"Rules and Regulations of the Civil Service Commission of the City of Cleveland Municipal Service"—
"The Commission adopted the Standard Classification of employment in the public service of the city of Cleveland, the county of Cuyahoga and the school district of the city of Cleveland, as prepared by the commission from the survey and report of Griffenhagen and Associates."

In other words, the Civil Service Commission adopted the classification of the Director of Public Safety, who had authority, under Section 85 of the Charter, "to classify the police and fire service of the city, in conformity with the ordinance of the Council, concerning the number of persons to be employed therein, and make rules for the regulation and discipline of such service."

The plaintiff claims that the Civil Service Commission did not definitely standardize and classify this position and define the duties of a Deputy Inspector of Police. The law, as the court interprets it, did not on November 5, 1931, require the Civil Service Commission, or the Director of Public Safety, definitely and in minute detail to fix and define the duties of Deputy Inspector of Police.

The suppression of crime is of such a character that a police force would be hampered rather than helped by the Director, Civil Service Commission or Council constantly establishing, changing and issuing rules and orders and generally meddling with or shackling the Police Department. Ordinarily, that Police Department is the most efficient which is restricted the least by rules, regulations and red tape.

The court is unable to understand what more the Civil Service Commission or the Director of Public Safety were required to do in further defining the duties of this position of Deputy Inspector of Police. As part of their

own "Laws, Rules and Classification" the Civil Service Commission adopted the classification, standardization and definition of duties as promulgated by the Director of Public Safety and as contained in the "Rules and Regulations of the Division of Police"; and in those latter rules the Deputy Inspector of Police, as well as all other officers and members of the Police Department, are made "responsible for the enforcement of the law, the preservation of the peace, and the protection of life and property."

The civil service provisions governing the police and fire departments were in force long before the Legislature of this state attempted to extend the civil service to other branches of the public service. It is a matter of common knowledge, I believe, that when the civil service was extended to other branches of the service and made general in its nature, including the police and fire departments of the city, those who by law were clothed with the authority to administer the civil service provisions, so far as possible, kept their hands off the police and fire departments, recognizing that certain customs and rules had grown up in those two departments during the years that they had been subject to their own civil service provisions, and the court believes that the provisions of Section 96 of the Cleveland City Charter, as well as the other provisions of law, relating to civil service, including those in the Constitution of the state of Ohio, and the rules adopted by the Civil Service Commission and the Director of Public Safety, are sound and in the interest of public policy.

Something has been said in argument by counsel, and there are certain allegations in the plaintiff's petition, to the effect that to permit this pomotion of Captain McMaster to stand would demoralize the Police Department. Certainly it should have no demoralizing effect upon any officer in the Police Department of the City of Cleveland who is desirous of official recognition through merit. There is an old proverb about experience being the best teacher. If the Chief of Police or the Director of Public Safety find an officer in the Department whc.

possesses the integrity and ability of Captain McMaster, certainly they should have some freedom in selecting that officer and assigning him to special duties and when those duties are performed "with fidelity for at least two years," he is entitled to the recognition and promotion in the manner provided by the plain language of Section 96 of the Charter.

Holding these views, the court finds that the injunction should be refused and the petition dismissed and judgment rendered against the plaintiff for the costs. Nominal appeal bond of $200.00 is fixed.

---

*Jones et al* v. *State ex rel.*, 39 Ohio App., 264; 177 N. E., 507, followed.