Kinkade, J.
 

 George D. Hile, plaintiff in error, as a taxpayer, brought an action in the court of common pleas of Cuyahoga county against the city of Cleveland and certain executive officers of the city, including the chief of police, Jacob Graul, in which action Hile sought to restrain ‘by injunction the payment by the city to Graul of his salary as chief of police.
 

 The facts alleged by Hile, as a basis for the relief sought, were, in brief, that Graul had been appointed chief without being required to pass a civil service examination, as called for by. Section 10, Article XV, of the Ohio Constitution, and by Sections 486-1 to'486-31, General Code, inclusive, enacted pursuant to Section 10, Article XV, of the Constitution. That Graul was appointed without passing a civil service examination is admitted by the defendants in error.
 

 The defendants alleged that Graul was appointed under and pursuant to the provisions of Section 96 of the City Charter of Cleveland, which did not require an appointee to that office to first pass a civil service examination; that Section 96 of the
 
 *101
 
 charter was in full accord with Section 10, Article-XV, of the Constitution, and even if not in full accord with Sections 186-1 to 186-31, General Code, inclusive, the charter was the higher authority and justified the appointment.
 

 Hile replied that Section 96 of the charter clearly contravened Section 10, Article XV, of the Constitution, as well as Sections 186-1 to 186-31, General Code, and was null and void on both grounds, and hence the appointment was without authority of law and furnished no legal basis for a disbursement of public money.
 

 The common pleas court found the issues in favor of the defendants and dismissed the action at the costs of Hile. The Court, of Appeals affirmed the judgment.
 

 Hile filed a motion for certification of record to this court, and filed also a petition in error in this court as of right, by reason of the constitutional question involved. The case has been fully heard on its merits here.
 

 A single question is presented for consideration here, that is to say, 'Was the appointment of Graul made according to law?
 

 Section 10, Article XV, of the Constitution, reads as follows:
 

 “Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall':be passed providing for the enforcement of this provision.”
 

 Section 96 of the Cleveland City Charter reads:
 

 
 *102
 
 “No person shall be appointed or employed in the classified service of the city under any title, not appropriate to the duties to be performed and no person shall be transferred to, or be assigned to perform any duties of, a position subject to competitive tests unless he shall have been appointed to the position from which the transfer is made as a result of open competitive test equivalent to that required for the position to be filled, or unless he shall have served with fidelity for at least two years immediately preceding in a similar position under the city.”
 

 It will be noted that the Constitution does not provide that all appointments must be made according to civil service competitive examinations, but only provides that “as far as practicable” they shall be' so made, clearly indicating, by the terms employed, that the framers of the Constitution fully appreciated that cases might easily arise wherein it would not be practicable to determine the qualifications of an applicant for appointment by a civil service examination, and that they understood, as well, the danger and embarrassment which would probably attend any attempt to fix, by a provision in the Constitution, any hard and fast method of determining so important a matter, and hence the method of making the selection, in such cases, was wisely left to the sound discretion of those who should be invested with the duty and power of making such appointment.
 

 We see no conflict between Section 96 of the Cleveland City Charter and Section 10, Article XY, of the Constitution. True, the terms employed differ, but the intent is the same; that is to say, to cover cases
 
 *103
 
 in which it is not practicable to determine the question by a civil service examination alone. The charter, requires competitive test unless the applicant “shall have served with fidelity for at least two years immediately preceding in a similar position under the city.” In other words, experience is substituted for prophecy as a test of what an applicant can do, and probably will do, if appointed.
 

 A large class of persons may be able to pass, with high grade, a civil service examination with respect to a position under consideration, and such an examination may show that all are qualified to fill subordinate places connected with the position, and therein render'honorable, loyal, and efficient service, and at the same time it may easily be true that no one of the class is able to fill the chief place for which an appointee is wanted to manage and superintend an important business institution.
 

 Performing. assigned duties, as an individual, under the guidance of a competent manager, is one thing. Acting as superintendent or general manager of an enterprise employing a large number of individuals is a very different undertaking.
 

 Men who have the ability to control and manage men successfully and to plan and carry out enterprises of importance are not easy to find.' It is common knowledge that most of the successful executives at the heads of important business institutions throughout the country to-day are men who began in lower positions and were promoted as they developed, and they developed because they possessed the indescribable qualities of leadership, the ability to manage and control men, and to plan
 
 *104
 
 and lay ont their work and supervise the activities of a large force. It has been well said that:
 

 “No man can learn what he has not preparation for learning, however near to his eyes is the object.”
 

 If he has capacity to acquire leadership, experience will very soon develop that trait, and thus insure his promotion along lines of his greatest usefulness.
 

 It is well known that the office of chief of police in a large city is an extremely important position which calls for a man of high executive ability, fine courage, dependability in any crisis which may arise, and a man of the highest personal integrity. He selects the men on the force who are best qualified for the work immediately in hand. Nobody other than an experienced, high-grade chief of police can hold the whole police department to a high state of efficiency. The safety and general welfare of the city, and the reputation of the city as well, depend very largely on the man who is chief of police.
 

 The plaintiff in error claims that G-raul had not served with fidelity in a similar position for two years prior to his appointment. There is ample evidence in the record to sustain a finding by the trial and appellate courts that he had so served. His service demonstrated and established his capacity to fill the place.
 

 It is difficult to see how the city could have promulgated a sounder or safer rule of procedure, or one more in accord with the letter and spirit of Section 10, Article XV, of the Constitution, than that embraced in Section 96 of the Cleveland City Charter.
 

 The claim of plaintiff in error that the appoint
 
 *105
 
 ment was illegal because not made as required by Sections 486-1 to 486-31, General Code, is completely met and answered by tbe decision of this court in tbe case of
 
 State ex rel. Lentz et al., Civil Service Commission,
 
 v.
 
 Edwards,
 
 90 Ohio St., 305, 107 N. E., 768, and cases therein cite,d, in which tbis court construed Section 3, Article XVIII, of tbe Constitution, with reference to tbe powers thereby conferred upon cities. That decision clearly held that power such as exercised in tbe instant case was conferred upon tbe city by Section 3, Article XVIII, of the Constitution. Tbis court has several times since approved and followed that decision.
 

 Tbe judgments of the trial and appellate courts are affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Day, Allen, Eobinson, Jones and Matthias, JJ., concur.