Marshall, C. J.
 

 This is an original action in this court, brought on the relation of the prosecuting attorney of Hancock county, praying that the respondent, as the chief of division of securities, be compelled by the extraordinary writ of mandamus to cancel the licenses heretofore issued to corporations, persons and associations engaged in the business of loaning money upon the security of chattels and salaries and wages at a rate of interest in excess of 8 per cent, per annum. The petition does not name any corporations, persons, or associations whom it is claimed are offending against the statutes, except that it alleges “that two, and possibly three of the licensees of the respondent are operating in the city of Findlay, in his [relator’s] county, and offending against the usury laws of the state in the respects hereinafter stated,” etc. The petition contains the further allegation, “and your relator further says that he is advised and believes, and he now charges the fact to be. that under
 
 *110
 
 the licenses now, and hereafter issued by the respondent, the said licensees, and each and every one of them, are charging and exacting, collecting and receiving from their several borrowers usurious interest, at the rate of thirty-six per cent per annum,” etc. The respondent demurs to the petition.
 

 The first legal question presented by the Attorney General in support of the demurrer is that the prosecuting attorney may not maintain this action, because he does not show a clear right in himself to the writ, neither does he have such beneficial interest as entitles him to prosecute this proceeding. This argument is not tenable. The petition is directed to alleged violations of law in Hancock county, and the prosecuting attorney, as the chief prosecuting officer, charged with the duty of enforcing the laws in that county, may properly take notice of alleged violations, and, if there is any dereliction of duty on the part of the respondent, pertaining to conditions in Hancock county, no one is more interested in invoking the discharge of respondent’s duties in that county than the prosecuting attorney. If the suit might have been brought by any taxpayer, it might also be brought by the prosecuting attorney. That it might have been brought by a taxpayer, if not the definite announcement of this court, is within the spirit of the declarations of this court in the cases of
 
 State
 
 v.
 
 Brown,
 
 38 Ohio St., 344;
 
 State
 
 v.
 
 Tanzey,
 
 49 Ohio St., 656, 32 N. E., 750, and
 
 State, ex rel. Trauger,
 
 v.
 
 Nash, Governor,
 
 66 Ohio St., 612, 64 N. E., 558.
 

 The next question presented is whether certain unnamed persons, corporations, or associations are violating the usury laws of the state, and whether they are being licensed to do so without any legal warrant therefor. This brings us to a consideration of the statutes in such cases made and provided.
 

 Section 6346-1, General Code, makes it unlawful for any person to engage in the business of making loans
 
 *111
 
 on certain chattel property therein named, or upon salaries or wage earnings, “at a charge or rate of interest in excess of eight per centum per annum, including all charges, without first having obtained a license so to do from the commissioner of securities and otherwise complying with the provisions of this chapter.” Other sections provide the procedure for making application for licenses, for their issuance, their transfer, and their revocation. Section 6346-2 provides, among other things: “The said commissioner of securities may revoke any license, if the licensee, his officers, agents, or employees shall violate any of the provisions of this act.” Section 6346-8 provides, in part: “Any person, firm, partnership, corporation or association, and any agent, officer or employee thereof, violating any provision of this act, shall for the first offense be fined not less than fifty dollars nor more than two hundred dollars and for a second offense not less than two hundred nor more than five hundred dollars and imprisoned for not more than six months. The commissioner of securities upon such second conviction shall revoke any license theretofore issued to such person, firm, partnership, corporation or association.”
 

 It will be seen, therefore, that the commissioner of securities has a discretion as to whether he will revoke a license upon a first violation. It was apparently the legislative intent that the fine imposed would be a sufficient punishment, but that upon conviction of a second offense he would have no alternative except to revoke the license.
 

 Inasmuch as the statute confers upon the chief of division of securities not only the power but the duty to issue licenses to proper persons, all duties on his part are defined and limited by the statute itself. He may not revoke any license, except for violation of the provisions of the act. No offenders are named in the petition in this cause. Neither can it be said to be
 
 *112
 
 alleged that the unnamed licensees are guilty of violating any of the provisions of the act. What is really charged is that they are observing the provisions of the act, and that the act itself is invalid. No particular section of the Constitution of Ohio, or the Constitution of the United States, is referred to as being transgressed by these statutes. Relator’s brief is almost as indefinite as the petition, because it merely inquires whether the law will “stand the constitutional test under the bill of rights of Ohio and the federal constitution.”
 

 In the instant case it'does not appear that the respondent is doing anything except that which the statute requires him to do. It does not appear that the licenses issued by him are other than proper licenses. It does not appear that any of the unnamed licensees are acting otherwise than in accordance with the permissions of their respective licenses. Ordinarily, ft is a proposition so simple that the statement of it should not be necessary in legal circles, that the writ of mandamus will not be awarded to compel an officer to do other than what his plain duty as defined by the statute requires that he should do.
 

 This should be a sufficient answer to the entire inquiry. It is, however, a matter of sufficient importance to justify a discussion, not only of the reasons for the judgment we are entering, but also a discussion of the precedents which have so far been established on this subject.
 

 In
 
 Wessell
 
 v.
 
 Timberlake,
 
 95 Ohio St., 21, 116 N. E., 43, Ann. Cas., 1918B, 402, the constitutionality of these statutes was under discussion. That case materially differs from the instant case, in that it was a prosecution for carrying on the business of making chattel loans without having first obtained a license. The principal defense made was that the entire act was unconstitutional, and it was claimed to be in violation of Section 1 of Article I of the Ohio Constitution de
 
 *113
 
 daring the inalienable rights of enjoying and defending life and liberty, acquiring, possessing, and protecting property; also that it was in violation of Section 16 of Article I requiring all courts to be open; and a violation of the Fourteenth Federal Amendment because it abridged the privileges and immunities of citizens and denied the equal protection of the laws. All of those matters were discussed at length and the conclusion reached that the act was constitutional. The second paragraph of the syllabus, however, expressly reserved consideration or decision of the question of revocation of licenses issued pursuant to Section 6346-2, General Code.
 

 Cramer
 
 v.
 
 Southern Ohio Loan & Trust Co.,
 
 72 Ohio St., 395, 74 N. E., 200, 69 L. R. A., 415, 2 Ann. Cas., 990, is similar in important respects. In that case Section 3836-3, Revised Statutes, now Section 9650, General Code, conferring power upon building and loan associations “to assess and collect from members and depositors such dues, fines, interest and premium on loans made, or other assessments as may be provided for in the constitution and by-laws,” and further providing that “such dues, fines, premiums or other assessments shall not be deemed usury, although in excess of the legal rate of interest,” was declared to be a valid enactment and not in conflict with Section 26 of Article II or Section 2 of Article I of the Constitution of Ohio.
 

 Section 6346-5, General Code, provides for a maximum interest charge of 3 per cent, per month. To those who can borrow at 6 per cent, per annum this seems oppressive and even shocking. This court may not determine the wisdom of the law. Being a political question, the court may not interfere, unless it is contrary to public policy. If the general purpose of the statute is to promote the public welfare, the court may only inquire whether it reasonably tends to do so. The extent of its benefits is not justiciable. A law can
 
 *114
 
 not be declared to be unconstitutional on the ground that it does not have uniform operation throughout the state if it operates equally and uniformly upon all those who bring themselves within the circumstances and conditions of the law. These statutes create a class, but do not do so arbitrarily or capriciously. Those who have no collateral except chattels and unearned wages cannot borrow upon as favorable terms as those who are able to offer unquestioned security. This situation is created, not by the statute law, but by an economic law. The Legislature has recognized the force of the economic law, and has sought to regulate its operation by providing a maximum of interest and charges, and by licensing and regulating those who engage in the loan business. The subject of loans and interest charges is a general one, in the sense that all classes of people have financial needs, but the perversity of nature is such that, the greater the need, the greater the difficulty of supplying that need. It thus results that those least able to pay the higher rate of interest are nevertheless subjected to it. On any other basis, those who have only chattels to offer as collateral could not borrow at all. No borrower is compelled to pay any particular rate, because it is in each instance the subject-matter of voluntary contract. The field of chattel loans is open to all persons and corporations who are willing to take the risk of the less adequate security, and who are willing to submit to the law’s regulations. It must therefore be held reasonable to make chattel loans a separate classification, and require that these statutes have uniform operation upon the class thus created.
 

 The best discussion to be found in our reports of the validity of classifications is that contained in the first syllabus of
 
 Gentsch
 
 v.
 
 State, ex rel. McGorray,
 
 71 Ohio St., 151, 72 N. E., 900. In the instant, case, we need only determine that the classification of borrowers and lenders has been made in good faith and
 
 *115
 
 on the basis of real and substantial differences in the circumstances of the borrowers and the risks involved.
 

 Another objection made to these statutes is that the license fee of $100 is in fact ■a revenue measure. We will not further discuss that question, because it has been settled so far as this court is concerned in the recent case of
 
 Globe Security & Loan Co.
 
 v.
 
 Carrel, Aud.,
 
 106 Ohio St., 43, 138 N. E., 364. While it has been held to be a regulatory measure, as distinguished from a revenue measure, and while it is there declared that the license fee is apparently high, there was no evidence in that case to show that it was in excess of the expenses incident to the administration of the law. The record in the instant case is equally deficient on this point. These statutes must therefore be held to be constitutional as against every attack made upon them in this proceeding.
 

 Writ denied.
 

 Matthias, Day, Allen, Kinkade and Stephenson, JJ., concur.
 

 Jones, J., concurs in propositions 2 and 3 of the syllabus and in the judgment.