## STATE ex TOWNSEND v BERNING, Treas.

Ohio Appeals, 1st Dist, Hamilton Co

No 5433. Decided July 5, 1938

George E. Kearns, Cincinnati and Jerome Goldman, Cincinnatti, for Relator.

Dudley M. Outcalt, Cincinnati. Walter M. Locke, Cincinnati and I. Jack Martin, Cincinnati, for Respondent.

## OPINION

By ROSS, PJ.

This is an original action in mandamus in this court.

The relator seeks to have an order of the Treasurer of Hamilton County, dismissing him from the office of Tax Clerk in such Treasurer's office, set aside.

The relator was appointed to the office after passing a competitive examination and being duly certified by the Civil Service Commission of Ohio. There are other clerks of the same status and duties in the office who were appointed under similar circumstances, and who have not been dismissed and performing like duties to those which the relator performed, and which are now being performed by the brother of the Treasurer, who was appointed upon the dismissal of the relator without cause.

There is nothing in the agreed statement of facts which indicates that the position formerly held by the elator under the classified service or which is now held by the brother of the Treasurer requires a fiduciary relationship or any species of trust, or any quality of merit and fitness which could not most practicably be ascertained by a competitive examination. Other clerks of like status whose merit and fitness for the same position was ascertained by competitive examination are serving with perfect satisfaction. The dismissal was not placed upon any other basis than upon the privilege granted by §486-8, GC, sub-section 8.

It is contended that the respondent's action is sustained by such section, as interpreted by the case of State ex Myers v Blake, etc, 121 Oh St 511. This is a Four Judge per curiam opinion of the Supreme Court. The Court say on page 518 of the opinion:

"The constitutionality of §486-8, GC, was recognized in State ex Bryson v Smith, Secy. of State, 101 Oh St 203, 128 N. E. 261. See, also, Hile v Cleveland (city), 118 Oh St 99, 160 N. E., 621."

In the Bryson case, the court had under consideration paragraph 1, of §486-8, GC, which applies to deputies bearing a fiduciary relationship to their principals. Para-

graph 8 was not considered and not approved.

The court say at pages 209-10 of the opinion in the Bryson case:

"But the occupant of this position is one who, although not actually termed a deputy by the statute, yet is shown by the allegations of this answer to be one who holds a fiduciary relation to his principal; and the legislature by the passage of §486-8, which exempted such applicants from examinations, was merely giving effect to the letter and spirit of the constitutional provision which is here involved. The name is not of the essence of the place.

Some of the elements which are conceded to be essential to the occupant of this position, such as experience, knowledge, or technical equipment, can of course be determined by competitive examination, but the confidential and fiduciary relation is paramount. This paramount condition, as pointed out, cannot be determined by examination, but must be determined by the personal knowledge, or the personal confidence of the appointing officer in the vigilance and faithfulness of the deputy or the one occupying the fiduciary relation. This is obviously the things the legislature had in mind. And just as the qualities mentioned canned be ascertained and determined by competitive examination, so the question or the nature of the position, when a sufficient showing has been made concerning these essential elements, the question whether it is such position as contemplated by the constitution and the legislation enacted pursuant thereto, in regard to the impracticability of ascertaining merit and fitness by competitive examination, becomes necessarily a judicial one."

The first paragraph of the syllabus in the Hile case, supra, is:

"Sec. 10, Art. XV, of the Ohio Constitution, does not prohibit the promotion and appointment of public officials in the civil service of cities without competitive examination in cases wherein it is not practicable to effectively test the capacity of applicants for such promotion or appointment by a competitive civil service examination."

At page 103 of the opinion, the court say:

"A large class of persons may be able to pass with high grade, a civil service examination with respect to a position under

consideration, and such an examination may show that all are qualified to fill subordinate places connected with the position, and therein render nonorable, loyal, and efficient service, and at the same time it may easily be true that no one of the class is able to fill the chief place for which an appointee is wanted to manage and superintend an important business institution.

Performing assigned duties, as an individual, under the guidance of a competent manager, is one thing. Acting as superintendent or general manager of an enterprise employing a large number of individuals is a very different undertaking."

In this case the court was considering a general exemption from classified service of those who are required to hold responsible executive positions of peculiar trust. Such exemption is manifestly sustained by the impracticability of ascertaining merit and fitness for such a position merely by a competitive examination.

These two authorities, therefore, sustain an exemption only when the impracticability of ascertaining merit and fitness by examination is apparent, either because of a fiduciary relationship or a required executive ability.

· In the Blake case, the position under consideration was that of Chief of the Division of Boiler Inspection. The court passed upon four questions. It was decided that the appointing authority had acted within the 30 days provided by statute in which exceptional appointments can be made; second, it decided that Chief of the Division of Boiler Inspection was an "assistant"; third, paragraph 8, of §486-8, GC, did not contravene Sec. 10 of Art. XV of the Ohio Constitution, when given a construction permitting the exceptional appointment of such Chief of the Division of Boiler Inspection; and, fourth, that the appointment was not discriminatory or made for political reasons, contrary to the provisions of §486-17, GC.

In passing upon the constitutional consideration, the court at pages 517-518 of the opinion says:

"An examination of the debates of the Ohio Constitutional Convention, Vol. 2, page 1378, indicates that the practical operation of this article was to be left to the Legislature to carry into effect by the enactment of proper laws. The section in question, §486-8, is one of the laws within the purview of the constitutional provision, and,

as such, if we can give the same a construction consistent with the Constitution, it is our duty so to do. If a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, it is the duty of the court to adopt that construction which, without doing violence to the fair meaning of the language, will render it valid. State v Kendle, 52 Oh St 346, 39 N. E. 947; State ex Weinberger v Miller, 87 Oh St 12, 99 N. E. 1078; 44 L. R. A. (NS) 712; Ann Cas., 1913 E, 716.

We think that the construction given the word 'assistants' in the section under consideration is a reasonable one, and within the legislative intent in the passage of the law in question, and that the same is not inconsistent with the constitutional requirements."

In deciding that the relator was an assistant, the court on page 516 of the opinion say:

"Each of these divisions has a chief, who is the recognized head of such division within the department of industrial relations. Clearly the word 'assistants,' as used in paragraph (a), sub-section 8, of §486-8, GC, does not refer to the assistant director contemplated in §154-5, because the director might have chosen two 'assistants' under §486-8, whereas §154-5 refers to only one 'assistant.'

The office of chief of the division of boiler inspection being thus within the purview of the department of industrial relations, he was clearly within its jurisdiction and a subordinate of the director thereof. As such chief of the division of boiler inspection, he was an 'assistant' to the head of the department, as an agent through whom the duties and purposes of the department were accomplished."

Now, although the court did not expressly so state, it is obvious that such a single individual as the Chief of the Division of Boiler Inspection of the State of Ohio, applying the laws relating to the particular subject to the multiple industries in Ohio, could most easily be a person whose merit and fitness could not be practicably ascertained merely by an examination. This, in effect, is the holding of the court, and such conclusion is especially evident from the supporting authorities noted, which, as heretofore indicted, are predicated upon this basis.

Following the line of reasoning in the Blake case, therefore, we cannot conclude

that the legislature by passing sub-section 8 of §486-8, GC, intended to provide that any elective officer could exceptionally appoint one whose merit and fitness for the position could be ascertained practicably by an examination, and that the sub-section only refers to those who could not be so selected.

It is clear in the instant case that the position occupied by the relator is not one in which any fiduciary relationship to his principal exists, and it is also clear that his merit and fitness for such position could be ascertained by a competitive examination, for, in the first place, they were so ascertained, and, in the second place, clerks of exactly the same status are carrying on the same work as their fellow employee, and these clerks are in the classified service, and their merit and ⏤tness were ascertained by a competitive examination.

If sub-section 8 means that an elective officer may exceptionally appoint two or three assistants ⏤r clerks without reference to the practicability of ascertaining merit and fitness by examination, then the legislature could increase this number of exemptions to 100 or 1000 and completely negative the entire civil service provisions of the constitution. Such could not have been the intention of the legislature, regardless of the fact that the constitutional provisions are not self-enacting.

The prayer of the petition for a permanent writ is granted. The dismissal was unlawful and relator will be reinstated as of October 15, 1937.

HAMILTON & MATTHEWS, JJ, concur.