Iíabt, J.
 

 The questions of law presented by this record are: (1) Is it the duty of the relator, as Director of the Department of Industrial Relations, to enforce the provisions of Section 17-la, General Code, and, if so, may he invoke the remedy of mandamus against the respondent for that purpose? (2) May the Legislature enact a general law “fixing and regulating the hours of labor” of firemen employed by cities, and providing “for the comfort, health, safety and general welfare” of such firemen, or are such provisions matters of local self-government, not subject to regulation or control by state legislation? (3) Is Section 17-la, General Code, as amended, unconstitutional and void because it is limited in its application to fire departments of cities only? (4) Is an act of the Legislature, if otherwise valid, unconstitutional and void because it imposes certain duties upon cities requiring the expenditure of additional funds, when the Legislature provides no additional funds for that purpose?
 

 ■In April 1921, the Administrative Code was enacted (109 Ohio Laws, 105), by which there was created the Department of Industrial Relations to be administered by the Director of Industrial Relations (Section 154-3, General Code). By Section 154-45, General Code, it is provided that the “Department of Industrial Relations shall have all powers and perform all duties vested by law in the Industrial Commission of Ohio,” with certain exceptions not important here. It reasonably appears from the law that the duty of enforcing the provisions of Section 17-la,' General Code, relating to hours of labor and the comfort, health, safety and general welfare of city firemen, is vested in the Director of the Department of Industrial Relations. Consequently, he has authority to bring this
 
 *208
 
 action, and it is his duty to do so, if the law is within the scope of legislative power.
 
 State, ex rel. Downing, Pros. Atty.,
 
 v.
 
 Powers, Chief of Div. of Securities,
 
 125 Ohio St., 108, 180 N. E., 647.
 

 The respondent asserts that for several reasons the action of mandamus will not lie against him as chief of the fire department of Cincinnati. Among these reasons, he claims that under the charter of the city of Cincinnati, he is subordinate to the director of safety and the city manager of the city, and that his acts are subject to their approval. He also claims that to comply with the state law would require a rearrangement of location of firemen or an increased number of firemen at increased expense, which are matters vested in the city council and entirely beyond his control. The answer to these claims is that under the law and the city charter, the chief is made responsible for the management and pontrol of the firemen of the city. The statute in question speaks positively and mandatorily as to what he shall do in the premises, and to comply he does not need the approval of the director of safety or other officials since they, as well as he, are bound to carry out the specific requirements of the law. If such a defense would have validity, governmental officials could refuse to comply with lawful requirements on the ground that it was inconvenient or financially embarrassing to do so.
 

 The Court of Appeals of Hamilton county in holding Section 17-la, General Code, invalid, bases its decision on the ground that this section is not a general law in the exercise of police powers to which local municipal ordinances on the same subject must yield; and that it is not a substantive law but an attempt to provide an administrative code to control the action of municipal authorities in purely administrative functions, and therefore in conflict with Sections 3 and 7 of Article XVIII of the Constitution, conferring upon
 
 *209
 
 municipalities local self-government and the right to adopt a charter for its exercise.
 

 The crucial and paramount question presented here is whether the city of Cincinnati, having'been granted and having accepted the privileges of charter or home-rule government under the Constitution, has immunity from legislative control relating to employment of firemen in the fire department voluntarily maintained and operated by such city.
 

 Section 1 of Article II of the Constitution provides that the legislative power of the state shall be vested in a General Assembly consisting of a Senate and House of Eepresenatives; and that except where authorized under the initiative and referendum, all legislative authority of the state must be exercised alone by the General Assembly.
 

 Authority exists in the Legislature to diminish, regulate or resume the powers it has conferred on all municipal corporations, unless interdicted by the Constitution. This necessarily results from the fact that under the Constitution all legislative power of the people is granted to the Legislature subject to the initiative and referendum, unless such legislative power is expressly or by clear implication granted to municipalities or other governmental subdivisions as arms of state government.
 
 People
 
 v.
 
 Pinckney,
 
 32 N. Y., 377. The constitutional grants of power to municipalities in this state are contained in Sections 3 and 7 of Article XVIII of the Constitution which are as follows:
 

 “Sec. 3. Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations,
 
 as are not in conflict with general laws.”
 
 (Italics ours.)
 

 “Sec. 7. Any municipality may frame and adopt or amend a charter for its government and may,
 
 subject to the provisions of Section 3 of this article,
 
 exer
 
 *210
 
 cise thereunder all power of local self-government.” (Italics ours.)
 

 In this connection, attention must be given to the broad powers reserved under the Constitution to the Legislature of the state by Sections 34 and 37 of Article II, which are as follows:
 

 ‘ ‘ Sec. 34. Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; and no other provision of the Constitution shall impair or limit this power.”
 

 “Sec. 37. Except in cases of extraordinary emergency, not to exceed eight hours shall constitute a day’s work, and not to exceed forty-eight hours a week’s work, for workmen engaged on any public work carried on or aided by the state, or any political subdivision thereof, whether done by contract, or otherwise.”
 

 Thus, power is granted to municipal corporations to legislate in the interest of public peace and the protection of persons and property within their territorial limits, but such legislation must not conflict with state legislation on the same subject, and there is reserved to the Legislature power to direct the manner and method by which municipal corporations shall effectively carry out their functions having to do with the preservation of the peace and the protection of persons and property.
 
 Niehaus, Bldg. Inspector,
 
 v.
 
 State, ex rel. Board of Education of City of Dayton,
 
 111 Ohio St., 47, 52, 53, 144 N. E., 433;
 
 State, ex rel. Ramey,
 
 v.
 
 Davis et al., County Commrs.,
 
 119 Ohio St., 596, 599, 165 N. E., 298. As was said by Judge Matthias of this court in the case of
 
 Schneiderman
 
 v.
 
 Sesanstein,
 
 121 Ohio St., 80, 82, 167 N. E., 158, 64 A. L. R., 981, “The police power thus conferred by the Constitution cannot be denied municipalities by statute, but that power is restricted, in that such ‘local police, sanitary and other similar regulations’ must not be ‘in conflict with general laws.’ Thus the legislative branch of the state
 
 *211
 
 government enacts laws to safeguard the peace, health, morals, and safety, and to protect the property of the people of the state, and these are the general laws referred to. They apply to all parts of the state alike. Municipalities may adopt and enforce local regulations covering the same subject so long and so far as the same are not in conflict with general laws.” See, also,
 
 City of Fremont
 
 v. Keating, 96 Ohio St., 468, 118 N. E., 114.
 

 On the other hand, matters which have to do with city management, the distribution of official function and responsibility, the improvement, of the territory comprised within the limits of the corporation and its adaptation to the purposes of residence and business, are within the peculiar jurisdiction and control of local municipal government. 28 Ohio Jurisprudence, 228, Section 120.
 

 Section 17-la, General Code, the validity of which is here drawn in question, regulates the hours of employment and the conditions under which firemen of cities shall work. The question before the court must necessarily be whether this is a matter of general public concern having implications which transcend municipal boundaries.
 

 It is a matter of general knowledge that the ownership of property in a municipality is not wholly confined to its inhabitants but some of it is owned by nonresidents; that the ownership of shares in corporations owning the large business and manufacturing properties of the cities are widely held; that large numbers of people residing outside the municipalities are constantly going within their boundaries, entering places of business and places of abode, and being exposed to the hazards of disastrous fires; and that through the growth of urban populations, the boundary lines of separate corporations are often coincidental with each other with the result that the residents of one municipality are constantly exposed to fire hazards
 
 *212
 
 of contiguous municipalities. The protection of life and property from the hazards of fire, conserves the private as well as the public resources of the country and consequently is a matter of public welfare and concern.
 

 Likewise, adequate fire protection calls for the employment of great numbers of men who are obliged to live under modes of life and conditions of employment which take them away from their homes for longer intervals of time than most employments, and which expose them to unusual dangers of life and limb. Likewise, the health of such employees is constantly placed in jeopardy by the incidents of their employment. These are considerations which call for the exercise of the police power in the interest of the public and the state. The Legislature is given large discretion in determining the measures which are necessary or appropriate to secure the public welfare. Statutes to promote such purposes are upheld, if possible, and it is only when the Legislature clearly transcends its powers that such statutes are stricken down.
 

 There appears to be a distinct conflict of authority in the decided cases on this specific subject. In some states, notably Michigan, Kentucky and Montana, the courts hold that any attempted legislative control of the operation and management of a fire department by a municipal corporation is an illegal interference with the right of local self-government; but in the states of Indiana, Illinois, New York, Nebraska and Minnesota, legislation similar to that now under review has been upheld.
 
 State, ex rel. Schroeder,
 
 v.
 
 Morris, Mayor,
 
 199 Ind., 78, 155 N. E., 198;
 
 People, ex rel. Moshier,
 
 v.
 
 City of Springfield,
 
 370 Ill., 541, 19 N. E. (2d), 598;
 
 People
 
 v.
 
 Pinckney, supra; Benson
 
 v.
 
 Peterson,
 
 180 Minn., 366, 230 N. W., 830.
 

 In the first above-cited case, the Supreme Court of Indiana had before it the determination of the validity of legislation very similar to that here in question in
 
 *213
 
 a mandamus action to require the city officials of the city of New Albany to comply with a statute providing that in cities with a population exceeding 15,000, and having a regularly organized paid fire force, such fire force should be divided into two platoons, one for day service and one for night service. The statute was held not to violate the principle of local self-government, but to be a valid police regulation, in view of the performance of duties thereunder being left to local officers. The court in that case said:
 

 “Appellees, by virtue of their respective official positions, are charged with certain statutory duties in the management and promulgation of laws pertaining to the corporate affairs and business welfare of the city. They are, therefore, within the purview of the statute at bar. While they represent the city of New Albany, they are nevertheless, to a limited extent, agents of the state for the purpose of administering all reasonable laws of a regulative character, as here shown, and not forbidden by the state or federal constitutions, and the laws and treaties passed and made pursuant thereto. The present law merely fixes a duty upon statutorily classified cities, and the performance of that duty is left to the local officers of each city. The state does not assume to take from the city of New Albany the management of its city fire department, or restrict its right of possession or control of its fire apparatus, or dictate the quantity, quality, or character of its fire-fighting tools and instruments, or whom it shall or shall not employ as firemen; nor does it assume to tell the city of New Albany that it shall maintain a fire department at all. It does, however, make it imperative on towns and cities in this state, that maintain a regularly organized paid fire department, * * * to adopt the platoon system. The act in question is constitutional.”
 

 The case of
 
 People, ex rel. Moshier,
 
 v.
 
 City of Springfield, supra,
 
 decided in 1939, considers many of the
 
 *214
 
 questions presented by the record in this case and the court fully sustains the validity of the provisions which are incorporated in the statute here under consideration. In issuing a writ of mandamus to the city of Springfield and its officers to enforce a minimum firemen’s salary statute, the court sustained the validity of the statute and held that since the protection of life and property from fire conserves the public resources, it becomes a matter not only of local concern but one in which the state itself has a vital interest. See
 
 Van Gilder, Admx.,
 
 v.
 
 City of Madison,
 
 222 Wis., 58, 267 N. W., 25, 268
 
 N.
 
 W., 108, 105 A. L. R., 244.
 

 When the policy of the state of Ohio relating to fire protection and to the welfare of firemen, as expressed in state legislation and in court decisions, is taken into consideration, the validity of the statute in question must be sustained. The state, through legislative enactment, has established a state-wide fire protective policy in providing an exhaustive state building code, to protect against fire hazards; and a department of workshops and factories to inspect buildings and eliminate fire hazards, by ordering alterations and preventing the use of buildings until compliance with lawful orders for alterations. The staté has established a tenure subject to removal for cause for the members of the fire departments of villages of the state (Section 4389, General Code), and a civil service status for firemen in cities (Sections 4378, 4380, General Code), and a state-wide system of firemen’s pensions, all of which are considered matters of state-wide concern and subject to state legislation.
 
 Thompson
 
 v.
 
 City of Marion,
 
 134 Ohio St., 122, 16 N. E. (2d), 208.
 

 The respondent claims that the statute in question is unconstitutional because it applies only to cities and therefore does not have uniform operation throughout the state. This claim is untenable. The Constitution
 
 *215
 
 recognizes the classifications of cities and villages, and many laws applicable to one class of municipalities are not made applicable to the others because of the difference in size and consequent public needs. The Constitution permits reasonable classifications and requires only that the laws have uniform operation upon all subjects within a class thus reasonably established.^
 
 Dillon
 
 v.
 
 City of Cleveland,
 
 117 Ohio St., 258, 158 N. E., 606;
 
 State, ex rel. Village of Cuyahoga Heights,
 
 v.
 
 Zangerle, Aud.,
 
 103 Ohio St., 566, 573, 134 N. E., 686.
 

 The respondent also claims the law in question to be invalid because it requires the city of Cincinnati to incur financial burdens but provides no method or plan for meeting them. It is no defense in an action for mandamus, which, if granted, would require a city to incur expense in carrying out some public duty, to say that compliance would leave the city without sufficient funds for other purposes. Fire protection is a matter of concern to the people of the state generally, and when the Legislature enacts general laws to make more efficient the management of fire departments within the cities for the protection of persons and property against the hazards of fire, the cities of the state may be required within reasonable limits to provide funds for the purpose of carrying out such legislation.
 
 Village of Kent
 
 v.
 
 United States, ex rel. Dana,
 
 113 F., 232 (C. C. A. 6);
 
 State, ex rel. Village of Cuyahoga Heights,
 
 v.
 
 Zangerle, Aud., supra; State Board of Health
 
 v.
 
 City of Greenville,
 
 86 Ohio St., 1, 28, 98 N. E., 1019;
 
 State, ex rel. Southard, Dir.,
 
 v.
 
 City of Van Wert,
 
 126 Ohio St., 78, 184 N. E., 12.
 

 Clearly, before the adoption of the constitutional amendments of 1912, giving municipalities of this state the right to adopt a charter and to operate under a home-rule form of government, the Legislature had the power to adopt legislation such as is now under consideration which would be binding upon every municipality of the state.
 
 City of Cleveland
 
 v.
 
 Payne,
 
 72
 
 *216
 
 Ohio St., 347, 74 N. E., 177. In the opinion of this court, Sections 3 and 7 of Article XVIII of the Constitution do not take away that power.
 
 City of Wooster
 
 v.
 
 Arbenz,
 
 116 Ohio St., 281, 156 N. E., 210;
 
 Schneiderman
 
 v.
 
 Sesanstein, supra; Schwartz, Admr.,
 
 v.
 
 Badila,
 
 133 Ohio St., 441, 14 N. E. (2d), 609;
 
 Thompson v
 
 .
 
 City of Marion, supra; State, ex rel. Moewer,
 
 v.
 
 Underwood et al., Civil Service Commission,
 
 137 Ohio St., 1, 27 N. E. (2d), 773.
 

 The judgment of the Court of Appeals is reversed and the writ allowed.
 

 Judgment reversed and writ allowed.
 

 Weygandt, C. J., Williams, Zimmerman and Bettman, JJ., concur.
 

 Turner, J., dissents.
 

 Matthias, J., not participating.