Taft, J.
Bespondent contends that the appointment of officers in the police force of a city represents the exercise of a power of local self-government within the meaning of those words as used in Sections 3 and 7 of Article XVIII of the Ohio Constitution; and that therefore the provisions of Section 151 of the Columbus charter can be applied notwithstanding their conflict with Section 143.34, Bevised Code.
*194 In State, ex rel. Lynch, v. City of Cleveland, 164 Ohio St., 437, 132 N. E. (2d), 118, the question was whether “a vacancy in the office of a municipal chief of police must be filled from a civil service eligible list” as required by the above-quoted provisions of Section 143.34, Revised Codo, or whether such appointment could be made otherwise in accordance with the provisions of the Charter of the City of Cleveland. The unanimous holding of this court is indicated in paragraph two of the syllabus, which reads so far as pertinent:
“Under * * * [Section 3 of Article XVIII] a municipality is authorized to choose its own method of selecting its own chief of police other than from a civil service eligible list.”
In the opinion by Wcygandt, C. J., it is said:
“Is the method of selecting a chief of police a matter of local self-government within the meaning of the first part of Section 3 providing that ‘municipalities shall have authority to exercise all powers of local self-government?’ It would seem that if a municipality is to possess such powers, one of them should be the authority to determine the method of selection that probably would be most effective and desirable in meeting the needs of that particular community.
“Hence, this court is of the opinion that the people of Cleveland did possess the political power to amend their charter and choose their own method for selecting their own chief of police other than from a civil service eligible list.”
The opinion also cites with approval and quotes from Harsney v. Allen, Jr., Chief of Police, 160 Ohio St., 36, 113 N. E. (2d), 86. In the opinion in the latter case by Stewart, J., it is said:
“The organization and regulation of its police force, as well as its civil service.functions, are within a municipality’s powers of local self-government. * * * it* * *
“Whether the chief of police should have control and power over the employees in his department, which the Charter of the City of Youngstown gives him, is a question for the people of Youngstown * * *.”
Relator endeavors to distinguish State, ex rel. Lynch, v. City of Cleveland, supra (164 Ohio St., 437), on the ground *195 that the application of Section 10, Article XV of the Ohio Constitution, was not raised or passed upon in that case. See paragraph four of syllabus of B. F. Goodrich Co. v. Peck, Tax Commr., 161 Ohio St., 202, 118 N. E. (2d), 525. Relator contends that that section of the Constitution, which was presented by the Constitutional Convention of 1912 and approved by the voters at the same time as were Sections 3 and 7 of Article XVIII, specifically authorizes the General Assembly to enact laws providing for “appointments and promotions in the civil service of * * * cities” being “made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations”; and that hence Section 143.34, Revised Code, as such a law, must apply notwithstanding any contrary provisions of the Columbus charter. There is much force to this contention. However, we are of the opinion that our previoxis decision in State, ex rel. Lentz et at., Civil Service Commission, v. Edwards, 90 Ohio St., 305, 107 N. E., 768, which is cited with approval at page 41 in Judge Stewart’s opinion in Harsney v. Allen, supra (160 Ohio St., 36), requires us to reject that contention and consider the authority of the General Assembly, to enact laws applicable to cities pursuant to Section 10 of Article XV of the Ohio Constitution, to be an authority to enact such laws to be applicable in cities only where and to the extent that such laws will not restrict the exercise by such cities of their powers of local self-government. Thus, such laws may be applicable, for example, where a city has failed to enact charter or legislative provisions on the subject covered by the statutes and the statutes do not conflict with any charter or municipal legislative provisions or where a city has in its charter expressly adopted the state statutes.
State, ex rel. Lentz, v. Edwards, supra (90 Ohio St., 305), was a proceeding in quo warranto instituted by the “civil service commissioners of the city of Dayton appointed under authority of Section 4478, General Code,” against those' who had been appointed by the city commission of Dayton as a civil service board in accordance with the provisions of a duly adopted city charter. After reference to Section 10 of Article XV of the Ohio Constitution, it is said in the opinion “by the court” in support of its judgment sustaining a demurrer to and dismissing the petition:
*196 “It would not be contended that the civil service of a city is not a matter of municipal concern nor that the power of regulating that service is not one of the powers of local self-government. * * *
“The manner of regulating the civil service of a city is peculiarly a matter of municipal concern. One of the powers of local self-government is the power of legislating with reference to the local government within the limitations of the constitutional provisions above referred to. As long as the provisions made in the charter of any municipality with reference to its civil service comply with the requirement of Section 10 of Article XV, and do not conflict with any other provisions of the Constitution, they are valid and under the cases referred to discontinue the general law on the subject as to that municipality. That provisions adopted by a city might differ from the general laws within the limits defined was not only expected but the very purpose of the amendment was to permit such differences and make them effective.
“* * * the city of Dayton fully complied with the letter and the spirit of Section 10 of Article XV by providing for appointments and promotions in the civil service of the city according to mei’it and fitness to be ascertained by competitive examinations.”
That Section 151 of the Columbus charter fully complies with the letter and spirit of Section 10 of Article XV of the Ohio Constitution would appear clear from a consideration of our decision in State, ex rel. King, v. Emmons et at., State Civil Service Commission, 128 Ohio St., 216, 190 N. E., 468.
In Hile v. City of Cleveland, 118 Ohio St., 99, 160 N. E., 621, the appointment of a chief of police without requiring that he pass a civil service examination was questioned. Paragraph two of the syllabus in that case reads:
“Section 96 of the Charter of the City of Cleveland, which provides that one seeking a promotion or appointment in the city civil service shall pass a competitive civil service examination ‘unless he shall have served with fidelity for. at least two years immediately preceding in a similar position under the city,’ does not contravene Section 10, Article XV of the Ohio *197 Constitution, but is in full accord therewith, and authorizes promotions and appointments of persons in the civil service of the city without civil service competitive examination, who have previously so served under the city.”
At page 104 in the opinion by Kinkade, J., it is said:
“The claim of plaintiff in error that the appointment was illegal because not made as required by Sections 486-1 to 486-31, General Code, is completely met and answered by the decision of this court in the case of State, ex rel. Lentz et al., Civil Service Commission, v. Edwards, 90 Ohio St., 305, 107 N. E., 768, and cases therein cited, in which this court construed Section 3, Article XVIII of the Constitution, with reference to the powers thereby conferred upon cities. That decision clearly held that power such as exercised in the instant case was conferred upon the city by Section 3, Article XVIII of the Constitution. This court has several times since approved and followed that decision.”
Also, in the opinion “by the court” in State, ex rel. Vogt, v. Donahey, Governor, 108 Ohio St., 440, 140 N. E., 609, it is said at page 445:
“The matter of the appointment of police officers is purely a matter of local self-government * *
Relator further argues that the words, “as are not in conflict with general laws” found in Section 3 of Article XVIII, modify not only the words “local police, sanitary and other similar regulations” but also the words “powers of local self-government.” As hereinbefore indicated, the decisions of this court have been to the contrary. As we view it, this constitutional provision first gives municipalities “authority to exexcise all powers of local self-government,” and then, with respect to some of those powers, i. e., the power “to adopt and enforce * * * local police, sanitary and other similar regulations,” it limits the powers to adopt such regulations to such “as are not in conflict with general laws.” However, the limitation is only such a limited limitation. Of course, the mere fact that the exercise of a power of local self-government may happen to relate to the police department does not make it a police regulation within the meaning of the words “police * * * regulations” found in that constitutional provision.
*198 Relator argues that the provisions of Section 143.34, Revised Code, are specific provisions applicable only to police and should control over the general provisions of Section 151 of the Columbus charter applicable generally to any “position in the competitive classified service.” If both these legislative enactments had been by the same legislative body, it might be reasonable to infer that that legislative body intended the specific provisions with respect to policemen to be effective notwithstanding their conflict with the general provisions relative to any position in the classified civil service. However, there is no justification for such an inference in the instant case. The charter by its terms purports to cover all positions in the classified civil service of the city. Positions of policemen are in that service. The people of Columbus, in speaking through their charter, have said nothing specifically about policemen which might justify an inference that they did not intend to include them in the positions dealt with in Section 151 of their charter.
The principal argument of relator is based upon the decisions of this court in State, ex rel. Strain, Dir., Dept of Industrial Relations, v. Houston, Chief of Fire Dept., 138 Ohio St., 203, 34 N. E. (2d), 219; City of Cincinnati v. Gamble et al., Board of Trustees, 138 Ohio St., 220, 34 N. E. (2d), 226; In re Fortune, 138 Ohio St., 385, 35 N. E. (2d), 442; State, ex rel. O’Driscoll, a Taxpayer, v. Cull et al., Civil Service Commission, 138 Ohio St., 516, 37 N. E. (2d), 49; State, ex rel. Daly, v. City of Toledo, 142 Ohio St., 123, 50 N. E. (2d), 338; and State, ex rel. Arey, v. Sherrill, City Mgr., 142 Ohio St., 574, 53 N. E. (2d), 501.
It was apparently with those decisions in mind that Woygandt, C. J., stated in State, ex rel. Lynch, v. City of Cleveland, supra (164 Ohio St., 437):
“* * * it is not surprising * * * that, with the changing personnel of the court during the 44 years these provisions [Sections 3 and 7 of Article XVIII] have been in effect, it has been no easy task to maintain something even remotely resembling consistency, and it would serve no useful purpose to indulge in a discussion of the details of each of the numerous decided cases.”
*199 Apparently, however, we are confronted with two lines of our own decisions which cannot be fully reconciled on any reasonable basis. To the extent that we can reconcile those cases on any reasonable basis, we should endeavor to do so, especially where overruling them would disturb long established and recognized administrative and legislative practices. However, to the extent that they cannot be reconciled, we believe it is our duty to determine which decisions and pronouncements of law we will follow, and then overrule our other decisions and pronouncements to the extent that they cannot be reconciled with those which we are now following. Otherwise, we will create an impossible situation for courts that are supposed to follow our decisions and for lawyers who must base their advice to clients on decisions which we render.
It is argued by relator that State, ex rel. Lynch, v. City of Cleveland, supra (164 Ohio St., 437), dealt only with “the selection of the chief of police as an officer responsible directly to and in close relation with the appointing authority” and not merely with the matter of promotion of personnel within the police department. However, if the “state-wide concern” in “matters relating to the members of a police department” is the basis for justifying having such matters controlled by the state, as the foregoing- cited decisions from volumes 138 and 142 of our reports indicate, it would seem that there would be even more “state-wide concern” to justify state control over selection of the head of the police department than there would be with respect tó appointment of less important members of such police department. There is certainly no apparent language in the Constitution that can furnish any reasonable basis for preventing state interference with the appointment of the head of the department while allowing such interference with appointments of somewhat less important members thereof. Also, any such possible distinction would seem to be irreconcilable with the decision in State, ex rel. Arey, v. Sherrill, supra (142 Ohio St., 574), which holds that a state statute imposing certain duties on the director of public safety with respect to inquiries into the cause of suspension of a police officer prevailed over a charter provision imposing such duties on the city *200 manager, thus holding in effect that the state can prevent a city from designating someone other than a director of public safety as the administrative head over the chief of police and his department.
It is undoubtedly true that the enforcement of laws by police in every part of the state is a matter of “state-wide concern.” Undoubtedly the state has power to provide for police in every part of the state to enforce its laws. Actually, in providing for sheriffs, our state laws do provide for such police. However, where a municipality establishes and operates a police department, it may do so as an exercise of the powers of local self-government conferred upon it by Sections 3 and 7 of Article XVI11 of the Constitution. If it does, the mere interest or concern of the state, which may justify the state in providing similar police protection, will not justify the state’s interference with such exercise by a municipality of its powers of local self-government. State, ex rel. Lynch, v. City of Cleveland, supra (164 Ohio St., 437); Hile v. City of Cleveland, supra (118 Ohio St., 99).
In considering which of our decisions and pronouncements of law in the foregoing-cited cases from volumes 138 and 142 of our reports are irreconcilable with the decisions and pronouncements of law that we are following in rendering our decision today, it must be remembered that only what is stated in a syllabus or in an opinion per curiam or “by the court” represents a pronouncement of law by this court. Further, in the event that there may be any other reasonable basis for those decisions, we believe that they should be merely distinguished and not overruled, notwithstanding that we may disagree with the reasons advanced for the decisions.
As to State, ex rel. Strain, v. Houston, supra (138 Ohio St., 203), we believe that it is reasonably arguable that the conclusion indicated by paragraph three of the syllabus can be supported as involving an exercise of the general police power of the state. It is conceivable that an exercise by the state of such general police power may properly affect the exercise of powers of local self-government by a municipality just as it may properly affect the liberty of an individual. See *201 Benjamin v. City of Columbus, 167 Ohio St., 103, 110, 148 N. E. (2d), 695. However, since no question with respect to the conclusion indicated by paragraph three of that syllabus is presented for our consideration in the instant case, we express no opinion thereon. We do however have some question as to the soundness of the pronouncements of law in paragraphs two and four of the syllabus.
As to City of Cincinnati v. Gamble, supra (138 Ohio St., 220), we have some question as to' the soundness of part of paragraph three of the syllabus and must necessarily overrule paragraph four thereof. As to the decision, we believe it is reasonably arguable that it can be supported on grounds other than those inconsistent with the decisions and pronouncements of law which we are following in the instant case, but, since no question with respect to the decision in the Gamble case is necessarily presented for our consideration, we express no opinion thereon.
As to In re Fortune, supra (138 Ohio St., 385), the precise question there decided is not before us for consideration in the instant case, and we express no opinion with respect to that question except to state that some of the reasons advanced for the decision are obviously inconsistent with the pronouncements of law and decisions in the cases which we are following in the instant case.
We cannot reconcile the syllabus or decision in State, ex rel. O’Driscoll, v. Cull, supra (138 Ohio St., 516), the syllabus and decision in State, ex rel. Daly, v. City of Toledo, supra (142 Ohio St., 123), and paragraphs four, five and six of the syllabus and the decision in State, ex rel. Arey, v. Sherrill, supra (142 Ohio St., 574), with the pronouncements of law and decisions being followed in rendering the decision in the instant case. Hence, we believe they should be overruled. It may be observed that the decisions rendered and pronouncements of law made by this court in State, ex rel. Lentz, v. Edwards, supra (90 Ohio St., 305), and Hile v. City of Cleveland, supra (118 Ohio St., 99), have never been overruled, distinguished or questioned and were not mentioned in any of the foregoing cited cases from volumes 138 and 142 of our reports, *202 except in the opinion in In re Fortune, supra (138 Ohio St., 385), where they were cited with apparent approval.

Judgment affirmed.

Stewart, Matthias, Bell and Herbert, JJ., concur.