RICHLEY, MAYOR, CITY OF YOUNGSTOWN, ET AL., APPELLANTS, *v.* YOUNGSTOWN CIVIL SERVICE COMMISSION ET AL., APPELLEES.

[Cite as Richley *v.* Youngstown Civil Service Comm. (1984), 9 Ohio St. 3d 15.]

(No. 83-603—Decided January 4, 1984.)

*Mr. Edward N. Sobnosky,* law director, and *Mr. William J. Higgins,* for appellants.

*Messrs. Berkman, Gordon, Murray & Palda, Mr. Bernard A. Berkman* and *Mr. George W. Palda,* for appellees Carmen Fortunato et al.

*Mr. James J. Corbett,* for appellees Fred Tarasi, Carl Spence, Kenneth Carpenter, and Alex Yankush.

CLIFFORD F. BROWN, J. R.C. 124.271 provides in pertinent part:

"Any employee in the classified service * * * who is appointed provisionally to fill a vacancy and who remains in provisional status in the same classification for a period of two years of continuous service, during which period no competitive examination is held, becomes a permanent appointee in the classified service at the conclusion of such two year period. * * *"

Appellants contend that this statute violates the constitutional mandate that merit and fitness for civil service positions be ascertained by competitive examination. Appellants base this argument on Section 10, Article XV of the Ohio Constitution, which provides that:

"Appointments and promotions in the civil service * * * shall be made according to merit and fitness, to be ascertained, so far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

In *Hile* v. *Cleveland* (1928), 118 Ohio St. 99, this court found that Section 10, Article XV did not pose an inflexible mandate of testing. In upholding the constitutional validity of a city charter provision which dispensed with the requirement of competitive testing if the applicant had "served with fidelity for at least two years immediately preceding in a similar position under the city," the *Hile* court recognized "* * * the danger and embarrassment which

would probably attend any attempt to fix, by a provision in the Constitution, any hard and fast method of determining [the constitutional requirement of 'merit and fitness'] * * *." *Id.* at 102.

R.C. 124.271 is analogous to the city charter at issue in *Hile* in that both are based on the rationale that experience can demonstrate a city employee's capability to fill an appointment. In the present case, the city employees requested examinations, but their efforts were frustrated by the mayor's failure to follow the proper appointing procedures. As was stated in *Yarosh* v. *Becane* (1980), 63 Ohio St. 2d 5, 14 [17 O.O.3d 3], "* * * [an appointing authority] cannot assert the failure of the employees to take examinations when the failure is the result of his neglect of his statutory duty." See, also, *State, ex rel. Alford,* v. *Willoughby* (1979), 58 Ohio St. 2d 221 [12 O.O.3d 229]. To do so "would encourage the continuing evasion of the civil service laws by those charged with their enforcement." *Id.* at 227.

Applying the analysis utilized by the court in *Hile, Alford,* and *Yarosh,* we hold today that continuous performance in a position for two years may constitute an acceptable substitute for competitive testing to determine the constitutional requirement of "merit and fitness." Accordingly, R.C. 124.271, which grants permanent and classified status by virtue of two years' continuous service does not violate Section 10, Article XV of the Ohio Constitution.

Appellants also argue that even if found to be constitutional, R.C. 124.271 does not apply to employees of CDA because that program is federally funded by HUD.[1] Appellants maintain that this federal supervision over CDA funds has divested the city of any control. This contention is without merit.

The federal involvement with CDA does not change the local character of the agency and cannot conceal the extensive control the city has over every phase of the CDA workers' employment.[2] Most importantly, however, CDA employees are implicitly included in the classified service under the city's

---

[1] Appellants base this theory, in part, on the last sentence of R.C. 124.271, which provides:

"This section does not apply to or affect any position in a program financed in whole or in part by federal funds *and* which is subject to federal merit system standards of the United States department of health, education and welfare, the department of labor, or the office of civil and defense mobilization." (Emphasis added.)

As can be readily seen, the above language is written in the conjunctive, *i.e.,* two conditions must be present before automatic civil service status is precluded: (1) federal funding *and* (2) availability of federal merit system standards.

In the present case, the evidence conclusively showed that CDA employees were not eligible for federal merit system protection or even eligible for federal civil service. Thus, the exclusion contained in the last sentence of R.C. 124.271 does not apply to CDA employees.

[2] CDA is a locally administered function under the exclusive control of the mayor with all of its employees subject to mayoral appointment. The salary levels and job titles of all CDA employees are also set by the mayor and approved by city council.

own home rule charter.[3] Inasmuch as the evidence presented at trial clearly established that CDA employees are city employees, appellees are entitled to permanent civil service status under R.C. 124.271.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES and J. P. CELEBREZZE, JJ., concur.

---

[3] The home rule charter of the city of Youngstown specifically provides in Section 52 B, as follows:

"The classified service shall comprise all positions not specifically included in the Charter in the unclassified service."

CDA employees are not specifically included in the unclassified service.